## TERRY v. CROSSWY. (No. 1166.)

(Court of Civil Appeals of Texas. Beaumont. July 3, 1924.)

**1. Injunction ⬤═12—Equity will not protect legal right in absence of showing of injury.**

Equity will not protect one in a legal right in the absence of a showing of injury.

**2. Mines and minerals ⬤═52—Injunction not granted to prevent use of pipes in wells on failure to show that property could be salvaged at profit.**

In proceeding for an injunction to prevent use of casing, tubes, and rods in abandoned oil wells, where plaintiff failed to show that he could salvage the property at a reasonable profit, he failed to invoke the equity jurisdiction of the trial court.

**3. Injunction ⬤═13—Irreparable injury necessary for injunction to protect personal property.**

Under Rev. St. art. 4643, § 3, relating to an injunction in favor of the owner of personal property, it should reasonably appear to the trial judge that the act complained of, unless restrained, will result in irreparable injury.

**4. Appeal and error ⬤═994(3), 1024(2)—Trial court is judge of credibility of witnesses and weight of testimony.**

In an application for injunction the trial court is the judge of the credibility of the witnesses and the weight of the testimony.

**5. Mines and minerals ⬤═52— Evidence held not to show error in failure to find that operation of oil wells would result in injury to property.**

In proceedings for an injunction against use of casing, tubing, and rods owned by plaintiff in oil wells abandoned by him, evidence *held* not to show error in trial court's failure to find that operation of the wells would reasonably result in injury to plaintiff's property.

**6. Fixtures ⬤═14 — Presumption that piping, rods, and tubes in wells were part of realty.**

Where pipes, rods, and tubes were put in oil wells by a lessee, they were presumed to be a part of the realty, and this presumption could be rebutted only by showing that the lessee under his contract with the owner had the right of removal.

**7. Appeal and error ⬤═931(4)—Presumed that, in refusing to enjoin use of pipes, rods, and tubes in oil wells by subsequent lessee, trial court found him an innocent purchaser.**

Where a lessee of oil rights abandoned his unrecorded lease, and a subsequent lessee had no notice of any of its terms as to removal of casing in wells, and there was nothing on the land to give notice that the prior lessee claimed any rights, it will be presumed that, in refusing an injunction to restrain the subsequent lessee from using the piping, rods, and tubes in the wells, the trial court found that he was an innocent purchaser.

**8. Fixtures ⬤═27(2) — Contract right to remove fixtures "at any time," construed as giving reasonable time after expiration of lease.**

Where an oil lease gave lessee a right to remove casing, pipes, and rods from wells at any time, he had only a reasonable time after the expiration of his lease to remove them.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, At Any Time.]

**9. Fixtures ⬤═27(2)—Failure of lessee to remove fixtures within a reasonable time held to result in forfeiture to owner of realty.**

Failure of lessee of oil lease to remove pipes, rods, and tubes in wells within a reasonable time after expiration of his lease, resulted in forfeiture making them part of the realty and vesting the owner of the fee with title thereto.

**10. Injunction ⬤═137(4)—Balance of convenience controls in case of substantial doubt as to propriety of temporary injunction.**

In case of substantial doubt as to whether relator is entitled to a temporary injunction, the doctrine of balance of convenience should control.

**11. Injunction ⬤═137(4)—On reasonable doubt as to relator's ultimate recovery, temporary injunction improper.**

Where trial judge has reasonable doubt as to relator's ultimate recovery, a temporary injunction should be refused on the proposition of balance of convenience.

**12. Mines and minerals ⬤═52—Refusal to enjoin use of casings, tubes, and pipings in oil wells held proper on doctrine of balance of convenience.**

In suit by a former lessee of an oil lease against a subsequent lessee to enjoin use of casings, tubes, and piping in oil wells, where it was doubtful whether he would suffer injury if not permitted to remove such fixtures, and it was not shown that he could get permission from the Railroad Commission to remove casings, as required by Acts 36th Leg. (1919) c. 155 (Vernon's Ann. Civ. St. Supp. 1922, arts. 7854c–7854k), refusal of the injunction was proper on the doctrine of balance of convenience.

Appeal from District Court, Hardin County; J. M. Combs, Judge.

Suit by H. M. Terry against R. W. Crosswy. From decree for defendant, plaintiff appeals. Affirmed.

James A. Harrison, of Beaumont, for appellant.

W. W. Cruse, of Beaumont, for appellee.

WALKER, J. This action was brought by appellant against appellee to have an oil lease, under which he had developed certain lands described by him in his petition, declared superior to one under which appellee was holding the land. He alleged that he had developed the land under his lease by drilling seven wells, and that appellee was in possession of the land and operating his

wells to his great damage. He closed his petition with the following prayer:

"Premises considered, plaintiff prays that this honorable court grant a temporary writ of injunction restraining defendant from producing oil from said four (4) wells above described, and restraining defendant from using the casing, tubing, and rods owned by plaintiff in said wells in the production of oil therefrom, and restraining defendant from hindering, interfering with, or preventing the plaintiff operating said wells and producing oil therefrom, and from removing the casing, tubing, and rods owned by plaintiff from said premises; and on final hearing that defendant's lease be held inferior to plaintiff's, and that as between plaintiff and defendant that plaintiff be adjudged the right of possession in and to the four (4) wells described above and the lot upon which they are located, and that defendant be perpetually enjoined and restrained from hindering or preventing plaintiff operating said four wells for oil, and preventing defendant from using plaintiff's property in producing oil on said premises, or from removing or from interfering with plaintiff removing any property of plaintiff's from the premises, for all costs, and general relief."

Upon a hearing the trial judge refused the injunctive relief prayed for, and appellant has brought this appeal.

### Conclusions of Fact.

On the 28th day of November, 1916, the owners, through their agents, leased to appellant the land described by him in his petition for the purpose of oil development. This lease granted appellant the right "to remove all fixtures, machinery, and improvements placed thereon by the said lessee at any time hereafter, excepting casing in wells that have already been drilled on the property hereafter described, which is reserved by the lessor." In due time, appellant took possession of the land under his lease, and drilled some seven or ten oil wells thereon, which he operated until about the year 1919, when, because of the failure of the wells to produce oil in paying quantities, he abandoned them and never afterwards attempted to operate them. In 1916 and 1917 he pulled the casings in some of the wells, without objection from the owner of the fee, but never attempted to pull the casings from the wells now being operated by appellee, nor made any request to do so until shortly before the institution of this suit. Upon the hearing of this case, appellant "admitted in open court that, so far as this application for temporary injunction is concerned, that plaintiff has lost his lease to the property by reason of not operating continuously as provided in his lease." Appellant never recorded his lease, and after he abandoned the wells in no wise exercised dominion over the lease. The derricks fell down, and on the 27th day of October, 1923, when appellee purchased a lease from the owners on the same lands claimed by appellant, there was nothing on the ground to give appellee notice of any claim at that time being asserted by appellant. Appellee had no actual notice of any claim on the part of appellant at the time he took his lease and paid therefor in the sum of $250. In a short while after taking his lease, appellee repaired appellant's oil wells and began operating them. When appellee began making preparations to operate the lease, appellant demanded of him compenstion for his piping, rods, and tubes in the old wells. Appellee refused to recognize any rights whatever in appellant, and was proceeding to operate the wells over appellant's objections. Appellant testified that the operation of these wells might result in injuring the piping or casing in the wells. There was no showing as to the probable value of such casing, piping, and tubes as might be removed from the wells. There was no showing that appellant could secure permission of the Railroad Commission to remove the casing from the wells, nor the cost of the necessary investigation before such permission could be given, nor the cost of plugging the wells after the piping was removed. There was no showing that if appellant were permitted to remove the casing, tubes, and rods from the well, that he would realize a profit between the cost of removal and the value of such material as he could salvage. It reasonably appears that appellee is insolvent and has no property subject to execution.

### Conclusions of Law.

The court did not err in refusing the temporary injunction for the following reasons:

[1, 2] (1) Equity will not protect one in a legal right in the absence of a showing of injury. When appellant failed to show that he could salvage the property claimed by him at a reasonable profit, he failed to invoke the equity jurisdiction of the trial court. Pomeroy's Equity Jurisprudence (4th Ed.) § 1347.

[3-5] (2) Under article 4643, § 3, Revised Civil Statutes, the owner of personal property is entitled to an injunction "where * * * irreparable injury * * * is threatened, irrespective of any legal remedy at law." The application of this statute necessarily involves a question of fact. It should reasonably appear to the trial judge that the act complained of, unless restrained, will result in "irreparable injury." The judge in this case heard the evidence and refused the injunction. He was the judge of the credibility of the witnesses and the weight of the testimony. The evidence is not such as to compel a conclusion from us that he erred in failing to find that appellee's operation of the wells would reasonably result in injury to the property claimed by appellant.

[6, 7] (3) Appellee was an innocent purchaser of his lease. Presumptively the piping, rods, and tubes in the wells were a part of the realty—permanent fixtures therein. This presumption could be rebutted only on a showing that appellant, under his special contract with the owners, had the right of removal. He admitted that his lease rights were forfeited, and that he no longer had any right on the land, nor to operate the wells. There being nothing in the record to visit appellee with notice of any of the terms of appellee's lease, and as all his rights on the land had been forfeited, and there being nothing on the land to give appellee notice that appellant was asserting any rights to the property, the court's judgment should be sustained on the presumption that he found that appellee was an innocent purchaser.

[8, 9] (4) The clause in appellant's contract giving him the right to remove his casing, pipes, and rods "at any time" should be construed as giving him only a reasonable time to remove them after the expiration of his lease. It certainly was not within the contemplation of the parties to the lease that appellant could incumber the land with his fixtures, machinery, piping, and tubes, and, after the expiration of his lease and abandonment of all of his rights thereunder, hold possession of the land by willfully failing and refusing to remove his property. The right to an indefinite possession of the land for the purpose of claiming his fixtures now asserted by appellant would not be to his advantage, because his property would necessarily deteriorate, but would result in great hardship to the owner of the fee. Under appellant's construction of the contract, he could withhold from the owners of the fee the possession of the land to the extent covered by his improvements for an indefinite time, though all his rights under the lease were forfeited. If we are correct in this construction of the lease, the failure of appellant to remove his fixtures within a reasonable time resulted in a forfeiture, making them a part of the realty and vesting the owner of the fee with title thereto. Wright v. Macdonnell, 88 Tex. 140, 30 S. W. 907.

[10, 11] (5) The doctrine of "balance of convenience" should control in cases of substantial doubt as to whether the relator is entitled to a temporary injunction. Cartwright v. Warren (Tex. Civ. App.) 177 S. W. 197. Where the trial judge has a reasonable doubt as to relator's ultimate recovery, the temporary injunction should be refused on the proposition of "balance of convenience." Chaison Townsite Co. v. McFaddin, etc., 56 Tex. Civ. App. 611, 121 S. W. 716. Again, it has been held that "the court in granting a temporary injunction should require a case of probable right and probable danger to the right without the injunction." 20 Michie's Digest, 495; Whitaker v. Hill (Tex. Civ. App.) 179 S. W. 539. As a statement of this rule, we quote from Judge Reese's opinion in the Chaison Case, supra:

"We quote from Joyce on Injunctions (volume 1, § 25): 'Where the rights of the parties are at all doubtful, the court applied to for an injunction should look at the balance of convenience, and act upon the consideration of the comparative inconvenience which may arise from granting or withholding the injunction. In this connection it is said in a recent case: "In a doubtful case, where the granting of the injunction would, on the asumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant, through its refusal, the injunction usually should be denied. But where in a doubtful case the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would on the contrary assumption be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such a doubt may relate either to the facts or to the law of the case, or to both." ' And it has been held in this connection that damage to others, not parties to the suit, may be considered in a doubtful case."

[12] Now, under the facts of this case, as we have said, it is doubtful that appellant would suffer any injury whatever if he were never permitted to remove his casings, tubes, and piping from the wells. Even if the injunction were granted, it was not made to appear that he could secure permission from the Railroad Commission to remove his casing. Discussing this proposition, Judge Cobbs said, in Southwestern Oil & Gas Co. v. Kimball Oil & Development Co. (Tex. Civ. App.) 224 S. W. 1111:

"The petition presents such a case as guarantees the right to bore the hole deeper. If the appellee be allowed to remove the casing, appellant's opportunity to go deeper because of the mandatory requirements of the law passed by the Thirty-Sixth Legislature (Laws 1919, c. 155), which prohibits withdrawing casing from any well without the consent of the Railway Commission, would be lost. And under rule 10 of said Railway Commission, when wells are so abandoned, they are required to be plugged in accordance with the prescribed rules, and to allow appellees to carry out its purpose and plug said hole in accordance with the law, so sealed, would destroy the rights of appellant to complete the well under the contract."

Construing the facts in the light of the law discussed by Judge Cobbs, we think the injunction was properly refused, under the doctrine of "balance of convenience."